UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TONYA B.,

           Plaintiff,

  -v-

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

_____

21-CV-00540-MJR
DECISION AND ORDER

      Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 12)

      Plaintiff Tonya B.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 8) is granted, and defendant's motion (Dkt. No. 10) is denied.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for DIB and SSI on March 6, 2019, with an alleged onset date of March 24, 2018. (Administrative Transcript ["Tr."] 11, 285-306). The applications were initially denied on May 2, 2019, and upon reconsideration on October 16, 2019. (Tr. 127-84, 187-206, 210-33). Plaintiff timely filed a request for an administrative hearing. (Tr. 234-45). On August 21, 2020, Administrative Law Judge ("ALJ") Willian Weir held a telephone hearing. (Tr. 101-26). Plaintiff participated via telephone, with counsel. A vocational expert also appeared at the hearing. The ALJ issued an unfavorable decision on October 15, 2020. (Tr. 8-33). On March 16, 2021, the Appeals Council denied Plaintiff's request for review. (Tr. 1-7). This action followed.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

At the first step of the sequential evaluation, the ALJ considered that, since May 24, 2018, Plaintiff's alleged disability onset date, she had worked but not at levels sufficient to be considered substantial gainful activity. (Tr. 14). Next, at step two, the ALJ determined that Plaintiff's severe impairments were: 1) left knee degenerative joint disease; 2) right ankle degenerative joint disease, status-post remote fracture; 3) cervical and lumbar degenerative disc disease; and 4) obesity. (Tr. 14-17). Also at step two, the ALJ found that fibromyalgia was not a medically determinable impairment and that Plaintiff had non-severe impairments, including asthma and depression. (Tr. 14-17). Next, at step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-18). Before proceeding to step four of the sequential evaluation, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except she could not work at unprotected heights, or around dangerous machinery, tools, or chemicals. (Tr. 18-26).

At step four of the sequential evaluation, the ALJ found that Plaintiff could perform her past relevant work. (Tr. 25). Additionally, in the alternative, at step five of the sequential evaluation, the ALJ determined that Plaintiff could perform other work that existed in significant numbers in the national economy. (Tr. 25-26). Accordingly, the ALJ found that Plaintiff was not disabled under the Act. (Tr. 26-27).

IV.    *Plaintiff's Challenge*

Plaintiff argues, *inter alia*, that the case must be remanded because the ALJ inadequately developed the record concerning Plaintiff's fibromyalgia. The Court agrees.

SSR 12-2p sets forth the criteria for establishing fibromyalgia as a medically determinable impairment: (1) a physician must have diagnosed fibromyalgia, (2) the physician must have provided evidence described by either the 1990 American College of Rheumatology ("ACR") criteria or the 2010 ACR Preliminary Diagnostic Criteria; and (3) the physician's diagnosis must not be inconsistent with other evidence in the record. *Monique Danielle W. v. Comm'r of Soc. Sec.*, No. 5:18-CV-184, 2019 WL 2358529 at *4 (N.D.N.Y. June 4, 2019) (citing SSR 12-2p).

Under the 1990 ACR criteria, a person must show: (1) "[a] history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back—that has persisted (or that persisted) for at least 3 months," though the pain "may fluctuate in intensity and may not always be present"; (2) "[a]t least 11 positive tender points on physical examination," provided these points are "found bilaterally" and "both above and below the waist"; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded."

Alternatively, under the 2010 ACR criteria a person must show: (1) "[a] history of widespread pain" as defined above; (2) "[r]epeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome" and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id.* (citing SSR 12-2p).

Here, the ALJ acknowledged that Plaintiff had been diagnosed and treated for fibromyalgia but found that it was not a medically determinable impairment because the record lacked evidence of at least 11 tender points under the first set of criteria, and because there was no evidence that other disorders that could cause repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. (Tr. 15).

Plaintiff points out that the record is not clear on this issue and argues that the ALJ should have recontacted Plaintiff's treating physicians or consultative examiners for clarification.

Plaintiff's treating provider for fibromyalgia was Dent Neurology ("Dent"). Dent diagnosed and treated Plaintiff for fibromyalgia. (Tr. 580-84, 728-35). Dent noted that Plaintiff had "multiple tender points over bilateral upper and lower extremities as well as neck, consistent with fibromyalgia," (Tr. 21, 584), but did not specify how many trigger points there were. Dent also noted that "most of [Plaintiff's] issues stem around her fibromyalgia." (Tr. 732-35).

In light of this evidence (that Plaintiff has multiple tender points and that her problems stem primarily from the fibromyalgia), the ALJ should have recontacted

Plaintiff's medical provider to seek clarification about whether her fibromyalgia diagnosis meets the SSR 12-2p criteria. *See Wilma M.S. v. Comm'r of Soc. Sec.*, 2022 WL 138537, at *3 (W.D.N.Y. Jan. 12, 2022); *Villar v. Comm'r of Soc. Sec.*, 2020 WL 1131225, at *3 (W.D.N.Y. Mar. 9, 2020); *Rick v. Comm'r of Soc. Sec.*, 2020 WL 4344844, at *3 (W.D.N.Y. Jul. 29, 2020).

The Commissioner argues that any error was harmless because the ALJ considered Plaintiff's fibromyalgia in determining her RFC. The Court disagrees. Although an ALJ's failure to consider an impairment to be severe may be harmless error, that is only if the ALJ found other severe impairments and considered the nonsevere impairment in formulating the claimant's RFC. Here, however, the ALJ did not even consider fibromyalgia to be a medically determinable impairment in the first place and did not specifically consider limitations arising from fibromyalgia when determining the *combined* effect of Plaintiff's impairments on her RFC. *Wilma*, 2022 WL 138537, at *4 (collecting cases).[3]

In sum, the Court agrees with Plaintiff that the ALJ should have recontacted her provider to seek clarification regarding the trigger points and whether other causes of her symptoms were excluded. "[SSR 12-2p] directs an ALJ to take additional steps, such as recontacting the claimant's treating physicians, when the record lacks adequate

---

[3] The ALJ stated in his decision that even if the medical evidence regarding fibromyalgia satisfied the requirements of SSR 12-2p, he would not conclude that the claimant has greater functional limitations. (Tr. 15). He further stated that the "weight of the evidence in the file" supports the RFC finding regardless of whether fibromyalgia is considered a severe impairment. (Tr. 15). The Commissioner latches onto these statements to argue that any error is harmless. The Commissioner misses the point. The ALJ should have fully developed the record regarding fibromyalgia and then provided a more specific explanation as to why fibromyalgia would or would not affect the Plaintiff's RFC. He states that it would not, but offers no reasons for this conclusion. Simply put, without such an explanation, the Court is not convinced that the ALJ actually considered Plaintiff's fibromyalgia in determining the RFC.

information to determine whether the claimant has a medically determinable impairment of fibromyalgia." *Cooper v. Comm'r of Soc. Sec.*, 2019 WL 1109573 at *4 (W.D.N.Y. Mar. 11, 2019). Accordingly, the ALJ here should have recontacted Plaintiff's treating providers to obtain additional information to help him determine whether the fibromyalgia criteria were satisfied. *Monique Danielle W.*, 2019 WL 2358529, at *6. The Court therefore finds that the ALJ erred at step two. *See Szefler v. Berryhill*, 2018 WL 6831156 at *7 (W.D.N.Y. Dec. 28, 2018) (remanding because the ALJ could not have disposed of plaintiff's fibromyalgia claim based on her physician's failure to evaluate her according to the SSA's criteria without first asking the physician to do so); *Alianell v. Colvin*, 2016 WL 446522 at *5, (W.D.N.Y. Feb. 5, 2016) (holding that the ALJ failed to follow SSR 12-2p and remanding where ALJ rejected opinion of fibromyalgia because of absence of evidence regarding trigger points).

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is granted and defendant's motion for judgment on the pleadings (Dkt. No.10) is denied. The case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: August 15, 2023
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge